**SO ORDERED.**

**SIGNED this 02 day of April, 2009.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| IN RE: | |
| FORBES TRANSPORT, LLC | CASE NUMBER |
| Debtor. | 08-07297-8-JRL<br>Chapter 11 |
| IN RE: | |
| FORBES SAND COMPANY, INC. | CASE NUMBER |
| Debtor. | 08-07296-8-JRL<br>Chapter 11 |

_____

ORDER

These matters came before the court on the motions to dismiss filed by both Forbes debtors. A hearing was held on the matters on March 24, 2009 in Raleigh, North Carolina. The two debtors are owned in part by the same principal and their operations as debtors in possession are interrelated.

BACKGROUND

Forbes Sand Company, Inc. and Forbes Transport, LLC ("the debtors") are in the

business of providing sand and base materials to the construction industry. Jeffery G. Forbes ("the principal") is president of the debtors and part owner, along with his parents, Dora Forbes and Wilson Lee Forbes, III ("the parents"). Forbes Sand mines sand off of real estate owned by the parents, and Forbes Transport delivers the quarried material to clients throughout eastern North Carolina. Both debtors filed voluntary Chapter 11 petitions on October 20, 2008. On February 19, 2009, this court entered an order prohibiting the debtors from the use, sale, or lease of Financial Federal's cash collateral under 11 U.S.C. §363(e). Financial Federal is a secured creditor of the debtors. The debtors had no objection to Financial Federal's motion to prohibit use of cash collateral, indicating that they no longer believed a plan was feasible. In response to the present motions to dismiss, Financial Federal objected to the dismissal and requested that the cases be converted to Chapter 7.

## DISCUSSION

The court shall convert a chapter 11 case to a case under chapter 7 or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause. 11 U.S.C. §1112(b)(1). "A motion filed under this section invokes a two-step analysis, first to determine whether 'cause' exists either to dismiss or convert. . . and second to determine which option is in 'the best interest of the creditors and the estate.'" Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.), 14 F.3d 240, 242 (4th Cir. 1994). What constitutes cause is not entirely defined. *See*, 7 Collier on Bankruptcy (15th ed. rev.) ¶ 1112.01[2][a]. Section 1112(b) enumerates examples of cause sufficient to justify the conversion or dismissal of a case. However, the enumerated list in §1112(b) is not exclusive and the decision to convert or dismiss a case remains within the discretion of the court. Id. When a

2

motion to dismiss is opposed, the burden of proof is borne by the movant who must prove his case by a preponderance of the evidence. In re Woodbrook Associates, 19 F.3d 312, 317 (7th Cir. 1994).

At hearing, the debtors asserted they were cash intensive businesses without available credit. Gasoline is a substantial factor in the debtors' operations. Fuel is needed to operate the machinery in the Forbes Sand quarry and also for the Forbes Transit delivery trucks. Questions arose on cross-examination about a series of checks written out of the debtors DIP account to Jeffery G. Forbes. The debtors admitted writing the checks to their principal but denied any wrongdoing. It was explained that the checks were cashed to pay for fuel. During the summer months the cash went to Forbes Transit's truck drivers. More recently, the cash was used on Forbes Sand's quarry machinery in an effort to reclaim the land as required by the North Carolina Department of Natural Resources. No formal ledgers were kept by the debtors to record where the withdrawn money went. While some receipts were proffered to establish the funds were put towards the cost of fuel, the transfers remain largely undocumented.

The debtors were further questioned about automatic drafts from the DIP account that were made by Countrywide. Countrywide holds a deed of trust on the principal's personal residence. It was established that the principal's personal bank account is with Gateway Bank, as is the DIP account. The mortgage payments to Countrywide were automatically drafted from the DIP account allegedly in error. Although there was no evidence in the bank statements of record, the debtors stated that the principal corrected the error and reimbursed the funds to the DIP account.

Repeatedly, it was asserted that the money withdrawn from the DIP account was for the

debtors' business operations and not the personal use of the principal. However, the debtors acknowledged that after the hearing on the motion to prohibit cash collateral, their attorney clearly stated that the DIP account was no longer to be used; yet, they continued to draw money from the account.

One of the enumerated examples of cause listed under section 1112 is failure to comply with an order of the court. 11 U.S.C. §1112(b)(4)(E). All of the funds withdrawn from the debtors' DIP account were cash collateral, the use of which was specifically prohibited by this court's order. The prohibition was placed on the cash collateral in order to provide creditors with adequate protection. In complete disregard for this court's order, the debtors continued to pay creditors of businesses whose cases they now seek to dismiss for lack of feasibility. This default coupled with the undocumented transfers to the debtors' principal, suggest dismissal is inappropriate.

Based on the foregoing, the motions to dismiss are DENIED. The two cases shall be converted to Chapter 7.

END OF DOCUMENT